LYONS, Justice
(concurring specially).
Much notoriety has ensued since we released our original opinion in this case. Numerous faxes and letters have been delivered to my chambers. Because the Canons of Judicial Ethics preclude me from reviewing materials submitted to this Court outside the procedures provided in the Alabama Rules of Appellate Procedure, I have instructed my staff to deliver any such faxes and letters directly to the office of the clerk of this Court. However, being aware of the degree, if not the content, of the public discussion concerning this case, I am compelled to preface my views on the merits of this case with some observations on the authority and responsibility of judges.
A judge exercises judicial power in two ways. A judge decides issues based upon rights derived from precedent established by previous decisions involving parties with similar cases or issues. A judge also decides issues based upon the interpretation of rights grounded in enactments such as a statute or a constitutional provision. On the one hand, when a judge applies the law based solely on decisions in earlier cases not governed by statutes or constitu *707 tional provisions, such as whether a contract has been breached, the judge is acting in an area where the courts, through precedent from these earlier cases, are the exclusive source of the controlling authority the judge must apply to decide the case. In such instances, the latitude of a judge of an appellate court is restricted only by a healthy reluctance to make unnecessary changes in the law, lest we forfeit the good to society that comes from the predictability of the law. On the other hand, in cases turning on rights created by statute or by constitutional provision, the Legislature or the people — not judges — are the source of the controlling authority the judge must apply to decide the case. The oath of judicial office requires that in those cases a judge apply the law, to the best of his or her ability, in a manner consistent with the will of the body that created the authority, regardless of any personal views as to the wisdom of the Legislature or the people in expressing that will.
The proceeding before us arises out of the attempted adoption of a child. The adoptive parents and the biological father disagree as to the effect of applicable statutes on the status of the attempted adoption. The source of our adoption laws is the Alabama Legislature. We do not have before us a case where the law has evolved solely from earlier judicial opinions recognizing certain rights and responsibilities under similar circumstances in an area not governed by a statute or a constitutional provision. Consequently, our latitude is constricted because, when applying principles of statutory construction to those laws regulating adoption, as we must here, we do not have the authority to amend, revise, or rewrite those statutes. The separation-of-powers doctrine set forth at Art. Ill, § 43, Constitution of Alabama of 1901, requires us to restrict our inquiry to determining the intent of the Legislature in enacting those statutes regulating adoption.
Reasonable persons may disagree with my views on how we should construe the adoption statutes in this case. Some of my fellow Justices have expressed their disagreement. I do not mean to suggest in any way that their views are motivated by anything other than their sincerely held understanding of how the applicable statutes should be construed.
Those unfamiliar with the basis upon which we must decide this case may well consider the result I support insensitive to such issues as the well-being of the child, the rights of the unborn, or the vital role of adoptive parents in society and in this proceeding. However, until my oath is revised to accommodate the creativity necessary to resolve cases based solely on such considerations, I cannot, even if I were so disposed, trump the applicable statute with personal views I cannot reconcile with the statute I am being asked to construe. The Justices of the Court are obliged by oath to respect the limitations on the exercise of judicial power imposed by the separation-of-powers doctrine. In cases where the Legislature, acting through statutes, or the people, acting through a duly ratified constitutional provision, are the source of the authority that we must apply to decide the case before us, we are not permitted to add to or to change those enactments.
My interpretation of the statutes that control in this case leads me to concur with the per curiam opinion. Section 26-10A-2(1), Ala.Code 1975, defines “abandonment” as:
“A voluntary and intentional relinquishment of the custody of a minor by parent, or a withholding from the minor, without good cause or excuse, by the parent, of his presence, care, love, protection, maintenance, or the opportunity for the display of filial affection, or the *708 failure to claim the rights of a parent, or the failure to perform the duties of a parent.”
The word “custody” in § 26-10A-2(l) has no logical field of operation, at least as to a father, before a child’s birth. Those portions of § 26-10A-2(l) most compatible with the concept of prebirth abandonment refer to a parent’s withholding, without good cause or excuse, his or her care, protection, and maintenance, or to a parent’s “failure to claim rights of a parent, or the failure to perform the duties of a parent.” However, no matter how compelling the case for a father to be concerned with the health and well-being of his child before it is born, an interpretation of § 26-10A-2(1) that would make such a concern relevant in an abandonment case conflicts with clear definitions in the Alabama Adoption Code as it read at the commencement of this proceeding.[6]
Section 26-10A-2, Ala.Code 1976, provides the definitions to be used in the chapter of the Code entitled “Alabama Adoption Code.” Section 26-10A-2(9) defines “parent” as the “[njatural or legal father or mother.” A father is defined as “[a] male person who is the biological father of the minor.” § 26-10A-2(5) (emphasis added). A minor is “[a] person under the age of 19.” § 26-10A-2(7). Title 26, Chapter 10A, does not define the word “child” nor does the word “child” appear in the definition of “abandonment” found at § 26-10A-2(l). Since the counting of one’s age does not begin until birth, I cannot conclude that a minor — “[a] person under the age of 19” — includes an unborn child and, at the same time, adhere to the text of the applicable statutes. I am unable to find in § 26-10A-2, which provides the definitions to be used in the Alabama Adoption Code, any authority to augment that definition by referring to Black’s Law Dictionary or to any other extraneous source.
I cannot accept In re Adoption of Doe, 543 So.2d 741 (Fla.), cert. denied, 493 U.S. 964, 110 S.Ct. 406, 107 L.Ed.2d 371 (1989), as persuasive authority. We have not been asked to apply Florida law; moreover, the Florida statute describing abandonment (Fla.Stat. Ch. 39.01) contains defined terms the Florida court did not apply in that case. Therefore, the applicable Alabama statutes compel me, regardless of my personal views on when life begins, to interpret the reference to “parent” in § 26-10A-2(l), when read in conjunction with § 26-10A-2(5) (defining a father as “[a] male person who is the biological father of the minor”), as meaning a father of a child who has been born. The Legislature recognized the theory of prebirth abandonment by amending § 26-10A-9, effective June 11, 1999. Also effective June 11, 1999, the Legislature amended § 26-10A-2(7), defining a “minor” as “[a] person under the age of 19,” so as to limit that term to “a minor parent only.” See § 26-10A-4(7). These proceedings predate those amendments; therefore, those amendments are not applicable here. The fact that the Legislature deemed it appropriate to make substantial changes to our adoption laws to accommodate the doctrine of prebirth abandonment corroborates my view as to its unavailability for proceedings that predate these amendments.
Based on similar reasoning, I find nothing in § 26-10A-9, Ala.Code 1975, provid *709 ing when consent to, or relinquishment for, an adoption may be implied, before that statute was- amended, to support the theory that prebirth conduct toward the child or the mother should be a relevant consideration in determining whether a parent has abandoned a child. The statute recites those acts on the part of a “parent” from which consent to an adoption or the relinquishment of parental rights might be implied. Because the parent in this case was, at the time of this proceeding, the father of a minor, that is, a child who had been born, § 26-10A-9 had no field of operation here. My views as to the inapplicability of the theories of prebirth abandonment or of implied consent to the adoption in this case render it unnecessary to evaluate the evidence concerning C.V.’s prebirth conduct.
On original deliverance, the Court voted 5-4 to order the immediate surrender of the child to the father. On rehearing, the Court has unanimously concluded that its mandate in the original opinion requiring the adoptive parents to surrender custody of Baby Boy G. to the father without further proceedings was not appropriate. On remand, the trial court should consider the custody issue further.

. Section 26-10A-9, Ala.Code 1975, was amended effective June 11, 1999, to add the following subsection:
"(1) Abandonment of the adoptee. Abandonment includes, but is not limited to, the failure of the father, with reasonable knowledge of the pregnancy, to offer financial and/or emotional support for a period of six months prior to the birth.”